IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANE HARRINGTON, | |
| Plaintiff, | 4:15-CV-3052 |
| vs. | |
| HALL COUNTY BOARD OF SUPERVISORS, et al., | MEMORANDUM AND ORDER |
| Defendants. | |

The plaintiff, Shane Harrington, is a Nebraska resident who operates an adult entertainment company. He has sued numerous individuals and entities who, he alleges, have violated his rights by taking steps to prevent him from opening a juice bar and strip club in Hall County, Nebraska. This matter is before the Court on several defendants' motions to dismiss (filings 46, 57, 69, 71, and 73), a motion to strike certain evidence the plaintiff has offered in opposition to these motions to dismiss (filing 111), and two plaintiff's motions to amend his complaint and consolidate this action with another case (filing 78 and 114).

BACKGROUND

Briefly summarized, the plaintiff's allegations are as follows.[1] Beginning in February 2015, the plaintiff sought to secure a location for an adult entertainment venue in Hall County. Filing 1 at 4. According to the plaintiff, he plans to open this business outside of Grand Island city limits, and more than 1,000 feet from "any restricted areas or districts." Filing 1 at 5. The plaintiff alleges that his proposed business will benefit the community, and will not lead to any illegal activities. Filing 1 at 5.

According to the plaintiff, the defendants have taken various steps to prevent him from opening his business in Hall County. First, the plaintiff alleges that in 2004, defendant Hall County Board of Supervisors adopted a

---

[1] The Court omits from this summary of the plaintiff's complaint all legal conclusions and characterizations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Many passages of the complaint read more like a brief than allegations of fact. Plaintiff's counsel would do well to reflect on the purposes of Rule 8: clearly informing the defendant and the Court of the facts necessary to establish plaintiff's claims for relief.

zoning resolution which restricts sexually oriented businesses to "tiny industrial districts constituting less than 0.1% of the entire Hall County land mass, where there are in fact no available locations." Filing 1 at 2. In addition, the zoning regulation restricts such businesses from operating between 12 and 6 a.m. Filing 1 at 2.

Next, the plaintiff alleges that "Defendant[s] individually, and collectively, have created, circulated, signed, published and promoted" a petition opposing the plaintiff's proposed business. Filing 1 at 6. The plaintiff specifically alleges that the Evangelical Free Church of Grand Island, Nebraska, Third City Christian Church, and Kent Mann (the director of Third City Christian Church) circulated and promoted the petition. Filing 1 at 8. And the plaintiff alleges that John and Jane Does 1–1,000 signed it. Filing 1 at 13. But otherwise, the plaintiff does not specifically allege that any particular defendant had a role in creating, circulating, signing, publishing, or promoting the petition. The complaint reproduces the petition as follows:

> Petition to stop Shane Harrington from opening a strip club. We the undersigned citizens from the town of Grand Island Nebraska and surrounding communities petition the Grand Island City Council and Hall County Board of Supervisors to not allow Shane Harrington to bring a strip club to this area. A strip club would promote sexual violence, prostitution, a larger burden on the area law enforcement officials, and will tear down and destroy families and individuals. Additionally, whether intentional or not, the adult entertainment industry promotes the exploitation of women for the entertainment of others and opens the door for potential trafficking of women. We demand that the Grand Island City Council and Hall County Board of Supervisors take any and all action necessary to protect the City of Grand Island Nebraska and all surrounding communities from suffering the negative consequences mentioned above.

Filing 1 at 3.

On May 7, 2015, there was a public hearing in Hall County about the petition. Filing 1 at 3. The plaintiff alleges that this hearing was held without notice to him or the public. Filing 1 at 3. The plaintiff alleges that at this hearing, two members of the Hall County Board of Supervisors made statements endorsing the petition. First, the plaintiff alleges that the defendant Pam Lancaster, a member of the Hall County Board of Supervisors, said, "It really is vital that people—who believe in the Christian

basis of life stand for them . . . I'm of a similar mind as well." Filing 1 at 7 (alteration in original). Second, the plaintiff alleges that defendant Doug Lanfear, a member of the Hall County Board of Supervisors, said, "I want to thank you for bringing your Christian values to the forefront . . . I want to thank you for getting this petition." Filing 1 at 7 (alteration in original).

In addition, the plaintiff alleges that various individuals made statements to the press in opposition to his plan to open a strip club in Hall County. First, the defendant alleges that Chad Nabity, the Regional Planning Director of Hall County, told the Grand Island Independent that "we have places where it can be done" and that the plaintiff could open his business in a "manufacturing or commercially zoned area in Grand Island." Filing 1 at 3. According to the plaintiff, this assertion was false because adult businesses are permitted to operate only in industrial districts in Hall County. Filing 1 at 3. Second, the plaintiff alleges that the defendant Shay McGowan, a Grand Island business owner, told the Independent that strip clubs constitute the felony of sex trafficking. Filing 1 at 6. Finally, the plaintiff alleges that the defendant Keith Baumfaulk, a St. Paul resident, told the Independent that "God put this on my heart with this strip club coming in . . . it's wrong in God's eyes." Filing 1 at 7 (alteration in original).

According to the plaintiff, the actions of the defendants have "destroyed [his] reputation to the extent that no one in Hall County will sell or lease [him] property for his business." Filing 1 at 7. The plaintiff alleges that the first real estate broker he hired to find a location for his business "informed [him] that he would not be able to find a location" as a result of the petition and the defendants' other actions. Filing 1 at 6. The plaintiff alleges that he retained a new real estate broker, and offered that broker an additional $10,000 bonus if the broker could obtain a location for the plaintiff's business in Hall County. Filing 1 at 6. The broker did locate a property, and the plaintiff and property owners entered into negotiations. Filing 1 at 6. However, according to the plaintiff, as a result of the defendants' actions, "on or about May 11, 2015, the property owners informed Plaintiff's real estate broker that they could not sell the subject property to Plaintiff for any price." Filing 1 at 7. The plaintiff's broker subsequently informed the plaintiff that he "could not purchase or lease any property in Hall County, as no individual or entity will enter into a sale or lease contract" with him. Filing 1 at 7.

Finally, the plaintiff alleges that each of the defendants "have engaged in a conspiracy to violate Plaintiff's civil rights and defame Plaintiff and are jointly and severally liable for the damages herein alleged." Filing 1 at 9. The plaintiff has brought eleven causes of action; each against all of the defendants. First, he has brought four claims under 42 U.S.C. § 1983, alleging that the defendants have violated the Establishment Clause of the

First Amendment, the Freedom of Speech Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment and Nebraska Constitution, and the Due Process Clause of the Fourteenth Amendment and Nebraska Constitution. Filing 1 at 14, 18, 20, 21. Next, he has brought antitrust claims, under the Sherman Act and Clayton Act. Filing 1 at 15–17. And finally, he has brought five state law tort claims: defamation; negligent hiring, training, and supervision; tortious interference with business relationships; infliction of emotional distress; and negligence. Filing 1 at 22–26.

According to the plaintiff, his damages include "lost income, estimated at \$40,000 per month, as well as emotional and psychological injuries, entitling Plaintiff to compensatory damages in the amount of \$10 million." Filing 1 at 9. The plaintiff additionally seeks "punitive damages in the amount of \$100 million to punish the Defendants and deter such conduct in the future, together with attorney's fees and the costs of this action." Filing 1 at 9. Finally, the plaintiff seeks "a declaratory judgment enjoining Defendants from enforcing their zoning resolution as prior restraint," filing 1 at 20, as well as an injunction "precluding Defendants from using Plaintiff's name in their petition and requiring Defendants to allocate a property in Hall County for Plaintiff's business," filing 1 at 27.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Twombly*, 550 U.S. at 555. For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

## DISCUSSION

### 1. MOTION TO STRIKE

As an initial matter, the defendants Third City Christian Church ("Third City") and Evangelical Free Church of Grand Island, Nebraska ("Evangelical Free Church") (collectively, "the Church Defendants") have moved to strike certain evidence the plaintiff has offered in opposition to the defendants' motions to strike. Filing 111. In response to the various motions to dismiss that are currently pending, the plaintiff has filed six separate but identical briefs. *See*, filings 84, 86, 87, 88, 89, 94. The plaintiff has filed multiple indexes of evidence in support of these briefs. *See* filing 85, 90, 91, 92, 93, 96, 97, 98, 99. Each index of evidence contains a "Narrative Report of Dr. Daniel Linz Plus 17 Exhibits." *See, e.g.,* filing 99. Evangelical and Third City move to strike this report, its accompanying attachments, and all references to the report and its attachments in the plaintiff's briefs opposing the motions to dismiss. Filing 112 at 2.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Here, Linz's report and its attachments were not mentioned in the complaint, nor are they public records. The plaintiff contends that the Court should nonetheless consider them because they are "presented in admissible form" and are relevant to "the defamatory nature of Defendants' statements and publications concerning Plaintiff." Filing 124 at 1. But a motion to

dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence offered to support those allegations. Accordingly, the Court will not consider the Linz report and its attachments in resolving the pending motions to dismiss.

## 2. MOTIONS TO DISMISS
### (a) Kent Mann

The defendant Kent Mann has moved to dismiss (filing 69) on various grounds. Specifically, he contends that the complaint fails to allege he participated in the alleged wrongful acts, and that "even if it did, it would fail to state any actionable claims against him." Filing 70 at 5. Mann also requests attorney's fees under the Nebraska anti-SLAPP statute, Neb. Rev. Stat. § 25-21,241 *et seq.*, and 18 U.S.C. § 1988.

*1. Motion to dismiss*

First, Mann argues that the plaintiff has failed to state a claim against him because he has failed to allege that Mann personally participated in any of the alleged wrongs. Filing 70 at 5–6. The complaint mentions Mann specifically only twice. First, it alleges, "Defendant THIRD CITY CHRISTAIN [sic] CHURCH authorized and participated in the aforementioned civil rights violations and defamation by and through their leadership, including but not limited to . . . Director and Defendant KENT MANN . . . ." Filing 1 at 8. The second instance merely repeats a portion of the first: "Defendant KENT MANN is a Director of THIRD CITY CHRISTIAN CHURCH . . . ." Filing 1 at 13.

Mann's alleged status as director of Third City is insufficient to establish his liability on any of the plaintiff's claims.[2] First, his director status is insufficient to establish his liability under § 1983. To state a plausible claim for relief under § 1983 against an individual defendant, the complaint must allege facts supporting that defendant's "personal involvement or responsibility for the violations." *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). The plaintiff has not done so here.

Second, Mann's alleged status as director of Third City is insufficient to establish his liability for violations of anti-trust laws. The plaintiff brings two causes of action: one alleging violations of §§ 1 and 2 of the Sherman Act, and one alleging violations of §§ 4 and 16 the Clayton Act. But §§ 4 and 16 of the Clayton Act do not furnish independent causes of action; rather, they permit private parties to bring an action for relief upon a showing of a separate

---

[2] Additionally, even if Mann could be held liable for the actions of Third City, as explained below, the plaintiff has also failed to allege facts giving rise to a plausible claim for relief against Third City.

violation of the antitrust laws. *See* 15 U.S.C. §§ 15, 26. Accordingly, the Court construes the plaintiff's complaint as bringing a single cause of action under §§ 4 and 16 on the basis of alleged violations of §§ 1 and 2 of the Sherman Act.

Corporate officers, directors, or agents can be personally liable for a corporation's anti-trust violations only if they participate in, order, or authorize those actions. *See Bergjans Farm Dairy Co. v. Sanitary Milk Producers*, 241 F. Supp. 476, 482 (E.D. Mo. 1965) *aff'd sub nom. Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.*, 368 F.2d 679 (8th Cir. 1966); *see also*, 15 U.S.C. § 24; *United States v. Wise*, 370 U.S. 405, 416 (1962). Here, the plaintiff has not alleged that Mann took any particular action to participate in, authorize, or order Third City's alleged wrongdoing.

Third, Mann's status as director of Third City is insufficient to establish his liability under state tort law. Under Nebraska law, the directors of a corporation are generally not liable to third persons for the acts of the corporation solely by virtue of their status as directors. *Huffman v. Poore*, 569 N.W.2d 549, 556 (Neb. Ct. App. 1997). Rather, a director will be individually liable for the acts of a corporation only if he takes part in their commission. *Id.* at 558 (quoting 3A William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 1137 at 300–01 (1994)). The plaintiff has not alleged any particular actions Mann took to participate in Third City's purported wrongdoing. Thus, the complaint's allegations that Mann is a director of Third City are insufficient to state a claim against him for any of the wrongs Third City is alleged to have perpetuated.

In addition to the allegations that mention Mann by name, the complaint also contains generalized allegations that "Defendants" have all committed each of the purported wrongs. But the problem with this pleading strategy is it does not inform any particular defendant of the specific claims against him in sufficient detail to permit him to defend himself against the claims. *See*, *Iqbal*, 556 U.S. at 678; *Ellis*, 179 F.3d at 1079 (affirming dismissal of a § 1983 case where the complaint failed to allege facts supporting any individual defendant's personal involvement in alleged constitutional violations). Accordingly, these generalized allegations are also insufficient to state a plausible claim for relief against Mann, and all of the plaintiff's claims against Mann will be dismissed.

2. *Attorney's fees*

Mann also argues that he is entitled to attorney's fees under Nebraska's anti-SLAPP statute, Neb. Rev. Stat. § 25-21,241 *et seq.* and 42 U.S.C. § 1988.

First, Mann requests attorney's fees under Nebraska's anti-SLAPP statute, which provides, "A defendant in an action involving public petition

and participation may maintain an action, claim, cross-claim, or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action." Neb. Rev. Stat. § 25-21,243. The statute specifies that costs and attorney's fees are recoverable if "the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification, or reversal of existing law." Id. An action involving public petition and participation is defined as one "that is brought by a public applicant or permittee and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge, or oppose the application or permission." Neb. Rev. Stat. § 25-21,242. A public applicant or permittee, in turn, is "any person who has applied for or obtained a permit, zoning change, lease, license, certificate, or other entitlement for use or permission to act from any government body." Id.

The plaintiff argues that he is not a public applicant or permittee within the meaning of the statute because he never actually applied for permission from Hall County to open his proposed strip club. And there is no evidence in the record suggesting that he has. However, the Court need not determine this point at this stage in the proceedings, because a motion for attorney's fees has not been made pursuant to Fed. R. Civ. P. 54.

State laws providing a right to attorney's fees are considered *Erie*-substantive. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 n.31 (1975). Accordingly, when a federal court exercises diversity or pendent jurisdiction over state law claims, it will enforce state law regarding attorney's fees. *See Felder v. Casey*, 487 U.S. 131, 151 (1988). However, federal courts will not enforce the procedural components of a state statute that grants a substantive right. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 429 (1996).

In other words, this Court is required to give effect to the substantive right to attorney's fees and costs created by Nebraska's anti-SLAPP statute. However, the Court shall apply federal procedure, rather than the procedure set forth by the statute, in deciding whether to award those fees and costs. The appropriate mechanism for requesting attorney's fees in federal court is Fed. R. Civ. P. 54. Under this rule, a claim for attorney's fees must be made by motion, filed no later than 14 days after the entry of the judgment. Fed. R. Civ. P. 54(d)(2). Thus, if Mann wishes to pursue his claim for attorney's fees under the anti-SLAPP statute, he may file a motion in accordance with the provisions of Rule 54.

Mann also requests attorney's fees under 42 U.S.C. § 1988, which provides that for a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as

part of the costs." 42 U.S.C. § 1988. But attorney's fees should be awarded only when the "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (per curiam) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). A plaintiff's claims are not groundless merely because they "were properly dismissed for failure to state a claim." *Id.* at 15. As long as "the plaintiff has 'some basis' for [his] claim, a prevailing defendant may not recover attorneys' fees." *EEOC v. Kenneth Balk & Assocs., Inc.*, 813 F.2d 197, 198 (8th Cir. 1987) (quoting *Obin v. Dist. No. 9 of the Int'l Ass'n of Machinists*, 651 F.2d 574, 587 (8th Cir. 1981)).

Again, the Court need not determine at this stage whether Mann is entitled to attorney's fees under § 1988. Mann may file a motion pursuant to Rule 54 to assert his claim to those fees.

### (b) <u>Church Defendants</u>

The Church Defendants have moved to dismiss the plaintiff's complaint on several grounds, arguing that the plaintiff has failed to state any plausible claim for relief against them. Filing 47 at 3.

*1. Consideration of petition*

As an initial matter, the Church Defendants have attached to their motion a copy of the petition the defendants allegedly circulated in opposition to the plaintiff's plan to open a strip club. Filing 48-2. The Church Defendants request that the Court consider it in resolving their motion to dismiss. Filing 47 at 2–3. As discussed above, in considering a motion to dismiss, the Court may, without converting the motion to one for summary judgment, consider those documents that are "necessarily embraced by the pleadings." *Mattes*, 323 F.3d at 697 n.4. Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti*, 666 F.3d at 1151. Here, the plaintiff alleges the contents of the petition in his complaint, *see* filing 1 at 3, and neither party disputes the authenticity of the petition.[3] Accordingly, the Court will consider the petition without converting the Church Defendants' motion to dismiss to a motion for summary judgment.

---

[3] The Court notes that there are some very minor discrepancies between the petition as reproduced in the plaintiff's complaint, and the copy of the petition attached to the Church Defendants' motion to dismiss. These discrepancies add up to a few small changes to individual words and punctuation, and do not alter the Court's analysis.

*2. Constitutional violations*

The plaintiff alleges that the defendants have violated his rights under the Establishment Clause of the First Amendment, the Freedom of Speech Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Equal Protection and Due Process clause of Art. I, § 3 of the Nebraska Constitution. Filing 1 at 14, 18, 20, 21. He sues under 42 U.S.C. § 1983 for the alleged violations of his federal constitutional rights. Filing 1 at 14.

The Church Defendants have moved to dismiss these claims on the grounds that only state actors can violate those particular constitutional rights. *See* filing 47 at 4. And, indeed, they are correct. The only amendment of the federal Constitution that can be violated by a non-government actor is the Thirteenth—which the plaintiff has not alleged a violation of. *Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991).* Likewise, the Equal Protection and Due Process clauses of the Nebraska Constitution apply only to government action. *See Citizens of Decatur for Equal Educ. v. Lyons-Decatur Sch. Dist., 739 N.W.2d 742, 756 (Neb. 2007).*

The plaintiff argues that, nonetheless, the Church Defendants can be held liable for alleged violations of his constitutional rights under § 1983 because they were acting under color of state law. Filing 84 at 12. Specifically, the plaintiff argues that his complaint "sufficiently pleaded the conspiracy between the private Defendants and governmental entities acting under color of law." Filing 84 at 12.

Section 1983 allows plaintiffs to bring claims against persons who violate their constitutional rights under color of state law. 42 U.S.C. § 1983. A private actor can be considered to act under color of state law "if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)* (quoting *Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)*).

This "close nexus" exists where the private party is "'a willful participant in joint activity with the State' in denying a plaintiff's constitutional rights." *Magee v. Trustees of Hamline Univ., Minn., 747 F.3d 532, 536 (8th Cir. 2014)* (quoting *Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005)*). Thus, to survive a motion to dismiss, a "plaintiff must plausibly allege 'a mutual understanding, or a meeting of the minds, between the private party and the state actor.'" *Id.* In doing so, the plaintiff must allege something more than "multiple contacts" between the private party

and the state; rather, he must plead "specific facts plausibly connecting" the alleged concerted action to the alleged violation. *Id.*

Here, the complaint alleges in conclusory terms that "Defendants have engaged in a conspiracy to violate Plaintiff's civil rights and defame Plaintiff," and "Defendants have engaged in a conspiracy to adopt and enforce an unconstitutional zoning resolution." Filing 1 at 9. But "a naked assertion of conspiracy . . . without some further factual enhancement . . . stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted). The plaintiff has not alleged any facts plausibly suggesting that the Church Defendants conspired with government actors in any way. Accordingly, the constitutional claims against the Church Defendants are dismissed as to the Church Defendants.

*3. Anti-trust violations*

Next, the plaintiff alleges that the Church Defendants have committed anti-trust violations. Filing 1 at 15, 17. As explained above, the plaintiff brings his claim under §§ 4 and 16 of the Clayton Act, which allow a plaintiff to bring suit for separate anti-trust violations. The plaintiff alleges that the defendants have violated §§ 1 and 2 of the Sherman Antitrust Act. Filing 1 at 16. The Church Defendants argue that to the extent their actions violated the Sherman Act, the *Noerr-Pennington* doctrine immunizes them from liability. Filing 47 at 5.

Under the *Noerr-Pennington* doctrine, "attempts to induce the passage or enforcement of law or to solicit governmental action" are not prohibited by anti-trust laws, "even though the result of such activities is to cause injury to others." *Razorback Ready Mix Concrete Co. v. Weaver*, 761 F.2d 484, 486 (8th Cir. 1985); *see, E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 143–44 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). To conclude otherwise would "deprive the people of their right to petition in the very instances in which that right may be of the most importance to them." *Noerr*, 365 U.S. at 139.

The only actions allegedly taken by the Church Defendants are "creating, promoting, circulating, distributing, copying, publishing, signing and submitting" a petition opposing the plaintiff's plan to open a strip club. Filing 1 at 8. This clearly falls within the scope of the *Noerr-Pennington* protection. The plaintiff additionally argues that the Church Defendants were "engaged in a conspiracy to prohibit sexually oriented businesses" in Hall County, giving rise to anti-trust liability. Filing 84 at 27. But, as explained above, this naked assertion of conspiracy is insufficient to state a plausible claim for relief. Consequently, the anti-trust allegations are dismissed as to the Church Defendants.

*4. Defamation*

The plaintiff asserts a claim of defamation against the Church Defendants, arguing that the petition circulated in opposition to his strip club "falsely imputed crimes of moral turpitude" to him. Filing 1 at 23. The Church Defendants move to dismiss, arguing that the petition did not constitute defamation. Filing 47 at 10.

Under Nebraska law, a claim of defamation requires "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Moats v. Republican Party of Nebraska*, 796 N.W.2d 584, 593 (Neb. 2011). But "when the plaintiff in a libel action is a public figure and the speech is a matter of public concern, the plaintiff must demonstrate 'actual malice,' which means knowledge of falsity or reckless disregard for the truth, by clear and convincing evidence." *Id.* at 593–94.

In a defamation suit, the threshold question is "whether a reasonable fact finder could conclude that the published statements imply a provably false factual assertion." *Steinhausen v. HomeServices of Nebraska, Inc.*, 857 N.W.2d 816, 828 (Neb. 2015). If a statement is merely one of subjective opinion, it is protected by the First Amendment and cannot be defamatory. *Id.* Under Nebraska law, distinguishing between fact and opinion is a question of law for the trial judge to decide based on the totality of the circumstances. *Id.* In making this determination, courts may consider all relevant factors, including: "(1) whether the general tenor of the entire work negates the impression that the defendant asserted an objective fact, (2) whether the defendant used figurative or hyperbolic language, and (3) whether the statement is susceptible of being proved true or false." *Id.*

Context is also important to whether a reader would view a statement as one of fact or opinion: "where potentially defamatory statements are published in a public debate . . . the audience may anticipate efforts by the parties to persuade others of their positions by use of epithets, fiery rhetoric, or hyperbole," such that "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Moats*, 796 N.W.2d at 596.

According to the plaintiff, the defamatory statement in the petition is: "A strip club would promote sexual violence, prostitution, a larger burden on the area law enforcement officials, and will tear down and destroy families and individuals." *See* filing 1 at 3, 23. The Court finds as a matter of law that no reasonable fact-finder could conclude that statement implies a provably false factual assertion, because the statement is not susceptible of being

proved true or false. To begin with, the statement does not imply that the plaintiff's proposed strip club has actually caused any ill effects; rather, it predicts that it "would." A prediction about a possible future event is an opinion, not a factual assertion; even if the predicted event does not come to pass, the prediction itself is not "false" when made. *See, Maurer v. Town of Independence*, 45 F. Supp. 3d 535, 552–53 (E.D. La. 2014); *WCP/Fern Exposition Servs., LLC v. Hall*, Civil Action No. 3:08–CV–522, 2011 WL 1157699, at *13 (W.D. Ky. Mar. 28, 2011); *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1044 (E.D. Wis. 1997); *Bebo v. Delander*, 632 N.W.2d 732, 740 (Minn. Ct. App. 2001). Additionally, the language in the statement is too vague to be proved false. It would be impossible to test by any objective measure whether a strip club would "promote" sexual violence or "tear down" families and individuals. *See Moats*, 796 N.W.2d at 597–98 (finding that vague statements that the plaintiff "mislead[s] creditors" and was not "doing financially well" were not susceptible of being proved false).

Because the plaintiff's defamation claim fails on the first prong, the Court will dismiss this claim against the Church Defendants.

*5. Tortious interference with business relationships*

The plaintiff alleges that the defendants have tortiously interfered with his business relationships. Filing 1 at 24. Specifically, he alleges that he had been in negotiations to purchase a property in Hall County for his strip club, but that as a result of the petition, the property owners refused to sell it to him. Filing 1 at 25. Additionally, he alleges that a strip club he owns in Buffalo County suffered "a decrease in patrons and sales" as a result of the petition. Filing 1 at 25. The Church Defendants move to dismiss on the basis of the *Noerr-Pennington* doctrine. Filing 47 at 13.

Under Nebraska law, the elements of tortious interference with a business relationship are: "(1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Huff v. Swartz*, 606 N.W.2d 461, 466 (Neb. 2000) (quoting *Koster v. P & P Enters.*, 539 N.W.2d 274, 278–79 (Neb. 1995)).

The Eighth Circuit has held that the *Noerr-Pennington* doctrine applies in the context of a tortious interference claim. *South Dakota. v. Kansas City S. Indus., Inc.*, 880 F.2d 40, 52 (8th Cir. 1989). As explained above, the Church Defendants' alleged creation, circulation, and promotion of their petition is within the scope of *Noerr-Pennington*. Accordingly, the plaintiff's claim of tortious interference with a business relationship is dismissed as to the Church Defendants.

13

*6. Infliction of emotional distress*

The plaintiff alleges that the defendants are liable to him for intentional infliction of emotional distress. Filing 1 at 26–27. He alleges that the petition and statements made in connection with the petition caused him "severe emotional and mental distress." Filing 1 at 26. The Church Defendants move to dismiss this claim, arguing that the First Amendment protects the statements in the petition, and that the statements do not rise to the level of "outrageous." Filing 47 at 14.

The elements of intentional infliction of emotional distress are: "(1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it." *Brandon ex rel. Estate of Brandon v. Richardson*, 624 N.W.2d 604, 620–21 (Neb. 2001).

The Free Speech Clause of the First Amendment can serve as a defense to this type of claim. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011). Where the speech in question is of "public concern," the First Amendment prohibits holding the speaker liable for it. *Id.* Determining whether speech is of public or private concern requires courts to examine the "'content, form, and context' of that speech." *Id.* at 453 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761 (1985)).

The content of the petition plainly relates to matters of public concern *See id.* at 454. It expresses opposition to a proposed strip club based on the possible effect it would have on crime, law enforcement, families, and individuals in Hall County. The form and context of the speech likewise demonstrate that it is on a matter of public concern; a petition circulated among the public and submitted to a governing body is a clear hallmark of "broad issues of interest to society at large." *See id.* at 454. And the fact that the petition mentioned the plaintiff by name does not transform the speech into one of private concern; it does not "change the fact that the overall thrust and dominant theme" of the petition "spoke to broader public issues." *See id.*

Accordingly, the Court concludes that the First Amendment protects the Church Defendants from liability for intentional infliction of emotional distress, and will dismiss that claim against the Church Defendants.

*7. Negligence*

Next, the plaintiff alleges that the defendants are liable for negligence against him. Filing 1 at 26. Specifically, he alleges that they were negligent in preparing the 2004 zoning resolution, in naming the plaintiff in their petition, in failing to consult with attorneys prior to circulating the petition,

in attributing criminal conduct to plaintiff, and in allowing their employees and other representatives to circulate the petition. Filing 1 at 26–27. The Church Defendants move to dismiss on the grounds that the plaintiff has failed to allege facts that state a claim for negligence. Filing 47 at 15.

Under Nebraska law, "an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 915 (Neb. 2010). The plaintiff has not alleged that any of the defendants' conduct created such a risk. Nor has the plaintiff alleged facts establishing any sort of "special relationship" that could support a finding that the defendants owed the plaintiff a duty of care. *See id.* at 917. Rather, to the extent the plaintiff alleges that the defendants had some duty to refrain from acting as they did, those duties are embraced by his other claims for relief. In other words, what the plaintiff styles as his negligence claim is simply a recasting of those other claims for relief, adding the words "negligent, careless and reckless." *See e.g.* filing 1 at 26. The plaintiff has simply not pled a negligence claim, and the Court will dismiss this claim against the Church Defendants.

*8. Negligent hiring, training, and supervision*

The plaintiff alleges that "Defendants were negligent, careless, and reckless in hiring, training, and supervising all individually named Defendants in this complaint, and all directors, supervisors, and employees, named herein, as such individuals are permitted and encouraged to engage in a custom and practice of unconstitutional conduct." Filing 1 at 23–24. The Church Defendants move to dismiss this claim on the grounds that the plaintiff has failed to allege facts supporting each of the elements of the claims. Filing 47 at 16.

Under Nebraska law, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer. *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993). Similarly, an employer is liable for negligent hiring "for physical harm to third persons caused by his failure to exercise reasonable care in selecting an employee." *Kime v. Hobbs*, 562 N.W.2d 705, 713 (Neb. 1997).

As explained above, the plaintiff has not alleged facts giving rise to a plausible inference that the church employees are individually liable for any tort against him. Nor has the plaintiff alleged that the conduct of any of the defendants caused him physical injury. Thus, the Court will dismiss the plaintiff's claim for negligent hiring, training, and supervision against the Church Defendants.

In sum, each of the plaintiff's claims against the defendants Evangelical Free Church of Grand Island, Nebraska, and Third City Christian Church, shall be dismissed.

### (c) Shay McGowan and Grand Island Dental Center

McGowan and the Grand Island Dental Center move to dismiss each of the plaintiff's claims against them under both Fed. R. Civ. P. 12(b)(6) and Nebraska's anti-SLAPP statute. Filing 57. Additionally, they request attorney's fees pursuant to the anti-SLAPP statute. Filing 58 at 19.

As described above, the complaint contains many generalized allegations that "Defendants" have all committed each of the purported wrongs. The Court has already explained why such generalized allegations fail to state a plausible claim for relief against any particular defendant. Only three portions of the complaint mention McGowan and the Dental Center by name. First, the complaint alleges that "defendant SHAY MCGOWAN told The Independent news that strip clubs, including that owned by Plaintiff, constitute the Felony of 'sex trafficking,' which is additionally defamatory." Filing 1 at 6. Next, the complaint identifies McGowan as a Nebraska resident who maintains a place of business in Grand Island. Filing 1 at 13. And finally, the complaint identifies Grand Island Dental Center as a non-incorporated domestic entity doing business in Grand Island. Filing 1 at 12.

The Court notes that, for the purposes of their motion to dismiss, McGowan and the Dental Center assume the complaint alleges they participated in the creation, circulation, or promotion of the petition. *See* filing 58 at 1. The complaint does not specifically assert these allegations against McGowan and the Dental Center. But even if it did, such allegations would be insufficient to state a plausible claim for relief against McGowan and the Dental Center for any involvement they may have had with the petition. Upon review of the complaint, the Court concludes that McGowan and the Dental Center stand in the same shoes as the Church Defendants with respect to any claims based on the petition—the plaintiff has not alleged any specific facts that would differentiate them. Consequently, for the same reasons the plaintiff failed to state a plausible claim for relief against the Church Defendants, the plaintiff has failed to state a plausible claim for relief against McGowan and the Dental Center with respect to any actions they may have taken regarding the petition.

Thus, the Court turns to the question whether the allegation that "defendant SHAY MCGOWAN told The Independent news that strip clubs, including that owned by Plaintiff, constitute the Felony of 'sex trafficking,' which is additionally defamatory" states a plausible claim for relief against

McGowan or the Dental Center. The Court concludes that it does not, because it lacks the level of specificity required by federal pleading standards.

The manner of setting forth allegations is a matter of procedure, not substance, meaning that when a federal court exercises jurisdiction over state law claims, federal pleading rules apply. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698–99 (8th Cir. 1979). In the Eighth Circuit, an allegation that a defendant has made a defamatory statement must be sufficiently specific to allow the defendant "to form responsive pleadings." *See Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996) (quoting *Asay*, 594 F.2d at 699). In most cases, "the use of *in haec verba* pleadings on defamation charges is favored" because "generally knowledge of the exact language used is necessary to form responsive pleadings." *Asay*, 594 F.2d at 699; *Holliday v. Great Atl. & Pac. Tea Co.*, 256 F.2d 297, 302 (8th Cir. 1958) ("In an action for slander or libel the words alleged to be defamatory must be pleaded and proved.").

Here, the plaintiff has failed to identify the exact content of the statement allegedly made. For instance, it is unclear whether McGowan specifically said that the plaintiff has committed felony sex trafficking, or whether he was discussing strip clubs generally, or whether he was making a prediction about the effect of the proposed strip club, if it were to be opened in Hall County. Which particular statement is alleged could significantly alter the types of defenses that may be available to McGowan. Nor does the complaint contain information regarding the context of the alleged statement, the date the statement was allegedly made, or whether the statement was published to others. This lack of clarity is even more pronounced given the plaintiff's propensity to plead legal conclusions in lieu of factual allegations—it is simply impossible to discern whether the allegation is meant to be a literal transcription of the statement made, or whether it represents the plaintiff's attempt to persuasively characterize the statement. Accordingly, the Court concludes that this allegation is insufficiently specific to allow the defendant to form responsive pleadings.

In sum, the Court dismisses all claims against McGowan and the Dental Center. As such, the Court need not reach McGowan's and the Dental Center's special motion to dismiss based on Nebraska's anti-SLAPP statute. McGowan and the Dental Center may assert their request for attorney's fees by motion pursuant to Fed. R. Civ. P. 54.

### (d) Hall County Defendants

The defendants Hall County Board of Supervisors, Hall County, Chad Nabity, Scott Arnold, Gary Quandt, Jane Richardson, Doug Lanfear, and

Pam Lancaster (collectively, "County Defendants") move to dismiss each of the plaintiff's claims against them, on various grounds. Filing 73.

The Court has already noted that the complaint generally alleges that all of these defendants have committed all of the alleged wrongdoing. As the Court has explained, generalized allegations and legal conclusions are insufficient to state a plausible claim for relief against any particular defendant. Accordingly, the Court will consider only those portions of the complaint that specifically allege wrongdoing on the part of one or more of the County Defendants.

Those allegations are as follows. First, the complaint alleges that defendant Hall County Board of Supervisors adopted and enforces a zoning resolution that restricts adult oriented business to industrial districts constituting less than 0.1% of the entire county, and precludes such businesses from operating between 12 a.m. and 6 a.m. Filing 1 at 2. Next, the complaint alleges that defendant Chad Nabity, the regional planning director of Hall County, told a newspaper that "we have places where it can be done" and that "the Plaintiff could open a club in a 'manufacturing or commercially zoned area in Grand Island.'" Filing 1 at 3. Then, the complaint alleges that the Hall County Board of Supervisors held a public hearing, without providing the plaintiff notice or an opportunity to be heard, on the petition opposing the plaintiff's plan to open a strip club in Hall County. Filing 1 at 3. Next, the complaint alleges that at that hearing, defendant Pam Lancaster, a member of the Board of Supervisors, stated, "It really is vital that people—who believe in the Christian basis of life stand for them . . . I'm of a similar mind as well." Filing 1 at 7 (alteration in original). Finally, the complaint alleges that at the hearing the defendant Doug Lanfear, a member of the Board of Supervisors, stated, "I want to thank you for bringing your Christian values to the forefront . . . I want to thank you for getting this petition." Filing 1 at 7 (alteration in original). The complaint also identifies all of the County Defendants: Hall County is a county in Nebraska; the Hall County Board of Supervisors is Hall County's local governing entity; Gary Quandt, Jane Richardson, Doug Lanfear, and Pam Lancaster are all Hall County supervisors; Scott Arnold is the Hall County board chairman; and Chad Nabity is the Hall County regional planning director. Filing 1 at 11–12.

*1. Free Speech Clause violations and standing*

The Court will take the County Defendants' arguments out of order to facilitate efficient resolution of the parties' arguments. First, the plaintiff alleges that "Defendants' zoning resolution and petition" violate the First Amendment by "unlawfully infringing upon Plaintiff's protected speech." Filing 1 at 18. The complaint alleges no facts indicating the County Defendants participated in creating, circulating, or promoting the petition.

Accordingly, the Court will consider whether the complaint has stated a plausible claim for relief with respect to the County Defendants' involvement in promoting or enforcing the zoning resolution. The County Defendants argue that the plaintiff lacks standing to bring constitutional challenges to Hall County's zoning regulations. Filing 76 at 9.

Federal courts have subject-matter jurisdiction only over cases in which the plaintiff "satisf[ies] the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). In other words, federal courts have no jurisdiction over cases in which the plaintiff lacks standing to bring the complaint. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing has three components. First, plaintiffs must show that they have suffered an injury-in-fact that is both concrete in nature and particularized to them. *Allen v. Wright*, 468 U.S. 737, 755 (1984). Second, the injury must be fairly traceable to defendants' conduct. *Id.* at 757. Third, the injury must be redressable—relief "must be 'likely' to follow from a favorable decision." *Id.*

In addition to these constitutional standing requirements, the Supreme Court has adopted certain prudential standing requirements—requirements that are not constitutionally mandated, but that ensure federal courts do not decide abstract or hypothetical questions. *See City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999). One of these is the third-party standing rule, which holds that one party generally may not assert the constitutional rights of another, except in certain specific circumstances. *Singleton v. Wulff*, 428 U.S. 106, 113 (1976).

Initially, the plaintiff argues that the requirement to show standing should be relaxed in this case, because he has asserted a First Amendment challenge to the zoning ordinance. And the Supreme Court "has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). But this exception relates only to the prudential third-party standing rule—it allows someone injured by a statute to challenge it on the basis that it violates some other person's rights. It does not obviate the need for *constitutional* standing. In other words, even if the exception would allow the plaintiff to raise the constitutional rights of third parties, he still must demonstrate that he himself has suffered an injury-in-fact that is traceable to the statute and would be redressed by a decision in his favor.

Here, although the plaintiff has challenged the zoning ordinance on First Amendment grounds, the defect he complains of is not that the zoning

ordinance is too imprecise, overbroad, or vague, such that it chills free speech. Accordingly, the exception does not apply. And even if it did, it would not excuse the plaintiff from the need to establish each of the three requirements of constitutional standing.

To establish constitutional standing in the context of challenging a zoning ordinance, a plaintiff "must allege specific, concrete facts demonstrating that the challenged practices harm him, and that he personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975). The plaintiff need not have a "present contractual interest in a particular project." *Id.* at 508 n.18. But the plaintiff must allege facts from which it reasonably could be inferred that, absent the restrictive zoning ordinance, "there is a substantial probability that [he] would have been able to purchase or lease in" the area subject to the ordinance, "and that, if the court affords the relief requested, the asserted inability of [the plaintiff] will be removed." *Id.* at 503.

Thus, for example, plaintiffs have standing to challenge "zoning restrictions as applied to particular projects that would supply housing within their means, and of which they were intended residents," because they are "able to demonstrate that unless relief from assertedly illegal actions was forthcoming, their immediate and personal interests would be harmed." *Id.* at 507.

But plaintiffs lack standing to challenge a zoning ordinance where they have no present interest in property affected by the ordinance, where they have not been denied a variance or permit by officials, and where they have not demonstrated any indication that if the zoning ordinance were to be stricken down, there would be property that would "satisf[y] [their] needs at prices they could afford." *Id.* at 507. In other words, there is no standing where the plaintiffs fail to allege facts suggesting that "were the court to remove the obstructions attributable to respondents, such relief would benefit" them. *Id.*

Here, the plaintiff has alleged that the zoning ordinance has restricted his ability to find a suitable location for his proposed strip club. However, he has not alleged that, were the zoning ordinance to be released, he would be able to purchase or lease land suitable for the club. Indeed, his complaint asserts that "no individual or entity will enter into a sale or lease contract with Plaintiff as the defamatory petition has destroyed Plaintiff's reputation to the extent that no one in Hall County will sell or lease Plaintiff property for his business." Filing 1 at 7. In short, the facts alleged "fail to support an actionable causal relationship" between the zoning ordinance and the plaintiff's inability to find a suitable location for his strip club in Hall County. *See Warth*, 422 U.S. at 507. Accordingly, the plaintiff lacks standing to

challenge the constitutionality of the zoning ordinance, and the Court has no jurisdiction over such a challenge. Thus, the Court will dismiss the plaintiff's claim that the County Defendants violated the Free Speech Clause of the First Amendment. And to the extent any of the plaintiff's other claims are based on his objections to the constitutionality of the zoning ordinance, those claims are dismissed as well.

*2. Establishment Clause violations*

Next, the County Defendants move to dismiss the plaintiff's claim under § 1983 alleging they have violated the Establishment Clause. Filing 76 at 6. They argue that none of the County Defendants' actions constitute official government action, and that even if they did, those actions did not violate the Establishment Clause. Filing 76 at 9.

It is somewhat unclear from the complaint what conduct specifically the plaintiff believes violated the Establishment Clause. However, the plaintiff's briefing clarifies that his claim is based on the zoning resolution and on the statements that Lancaster and Lanfear made at the public hearing. *See* filing 84 at 14. As the Court has explained, it has no jurisdiction over constitutional challenges to the zoning ordinance, Accordingly, it shall limit its inquiry to whether, as a matter of law, Lancaster and Lanfear's alleged statements might constitute a violation of the Establishment Clause.

The purpose of the Establishment Clause is to "prevent, as far as possible, the intrusion of either [the church or the state] into the precincts of the other." *Lemon v. Kurtzman*, 403 U.S. 602, 614 (1971). However, it "do[es] not call for total separation between church and state; total separation is not possible in an absolute sense. Some relationship between government and religious organizations is inevitable." *Id.* Indeed, the Constitution "affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any." *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984). There is no *per se* rule for deciding when government action violates the Establishment Clause. *Id.* at 678. Rather, the Supreme Court has "repeatedly emphasized [its] unwillingness to be confined to any single test or criterion in this sensitive area." *Id.* at 679; *see also Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (acknowledging that no single test fully delineates the contours of the Establishment Clause).

It is clear that not all invocations of religion in a government sphere constitute violations of the Establishment Clause. *See id.* at 675–76 (listing numerous ways in which the government has acknowledged the role of religion in American life). For instance, the Supreme Court found no Establishment Clause violation when a town invited a predominantly Christian set of ministers to open town meetings with prayer. *Town of Greece, N.Y. v. Galloway*, 134 S. Ct. 1811, 1824 (2014). Such a practice was

acceptable because the town did not compel its citizens to participate in the prayer, because the town did not discriminate against any religious group in deciding who would lead the prayer, and because the prayer had the secular purpose of "invit[ing] lawmakers to reflect upon shared ideals and common ends before they embark on the fractious business of governing." *Id.* at 1823–24. In reaching its conclusion, the Court noted that "willing participation in civic affairs can be consistent with a brief acknowledgement of . . . belief in a higher power, always with due respect for those who adhere to other beliefs." *Id.* at 1827–28.

Similarly, the Eighth Circuit found no violation of the Establishment Clause where the Board of Education in a small town in Missouri enforced a rule prohibiting school dances. *Clayton by Clayton v. Place*, 884 F.2d 376, 380–81 (8th Cir. 1989). The decision to retain the prohibition came after a board meeting at which several members of the public expressed religious views on the matter. *Id.* at 380. In addition, several members of the board indicated that their individual religious beliefs favored the rule. *Id.* But the Eighth Circuit found that these circumstances were insufficient to render an otherwise-acceptable government action unconstitutional, holding that "[t]he mere fact a governmental body takes action that coincides with the principles or desires of a particular religious group . . . does not transform the action into an impermissible establishment of religion." *Id.* It further explained, "We simply do not believe elected government officials are required to check at the door whatever religious background (or lack of it) they carry with them . . . ." *Id.*

Here, Lancaster allegedly said, "It really is vital that people—who believe in the Christian basis of life stand for them . . . I'm of a similar mind as well." Filing 1 at 7. And Lanfear allegedly stated, "I want to thank you for bringing your Christian values to the forefront . . . I want to thank you for getting this petition." Filing 1 at 7. These statements constitute mere brief acknowledgments of the role of religion in society or, at most, expressions of individual religious belief. Indeed, they are considerably less religion-promoting than the actions held to be constitutional in *Town of Greece* and *Clayton*. And the Board took no other actions suggesting that these statements were part of some broader pattern of behavior meant to promote a particular religious worldview: the Board took no official action on the petition, did not prohibit the plaintiff from opening a club in Hall County, and did not indicate that it would refuse input from those with other religious views. Accordingly, the Court finds as a matter of law that the plaintiff's allegations fail to state a plausible claim that the County Defendants violated the Establishment Clause.

*3. Equal Protection Clause violations*

Next, the County Defendants move to dismiss the plaintiff's claim that they have violated the Equal Protection Clause of the Fourteenth Amendment. Filing 76 at 18. The plaintiff alleges that the petition, and the County Defendants' alleged endorsement of it at the public hearing, violated the Equal Protection Clause by treating him as a "class of one." Filing 1 at 20–21.

The Equal Protection Clause requires that the government treat all similarly situated people alike. *Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir. 2005). The Supreme Court recognizes an equal protection claim for discrimination against a "class of one." *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The purpose of a class-of-one claim is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination. *Id.* A class-of-one claimant may prevail by showing he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Id.*

The plaintiff has alleged no *facts* here that would allow the Court to infer either disparate treatment or that such treatment was intentional. The plaintiff does not identify any other individuals who are "similarly situated," nor explain what "similarly situated" means in this context—meaning that the plaintiff has not actually identified any disparate treatment to which he has been subjected. *See Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998). Accordingly, the Court will dismiss the plaintiff's Equal Protection claim against the County Defendants.

*4. Due Process Clause violations*

Next, the plaintiff alleges that the County Defendants have violated his rights under the Due Process Clause of the Fourteenth Amendment by holding a hearing regarding his proposed strip club without providing him notice or an opportunity to be heard. The County Defendants move to dismiss on the grounds that the plaintiff has been deprived of no protected liberty or property interest. Filing 76 at 19.

To assert a claim for violation of procedural due process, the plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965–66 (8th Cir. 2015).

As the Court understands it, the plaintiff alleges that he was deprived of a protected property interest when, at the hearing, the defendants expressed "their intention to deny Plaintiff a conditional use permit" for his intended strip club. Filing 1 at 22. The County Defendants argue that the

plaintiff has no property interest in any conditional use permit, and that even if he did, he has not been deprived of such interest. Filing 76 at 19.

A plaintiff has "a constitutionally cognizable property interest in a right or a benefit" if he has "a legitimate claim of entitlement to it." *Stevenson*, 800 F.3d at 967–68 (internal quotations omitted) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). To have a legitimate claim of entitlement to a benefit, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (internal quotations omitted). The Due Process Clause itself does not itself create such entitlements; rather, they arise "from an independent source such as state law." *Id.*

Assuming *arguendo* that the plaintiff has a "legitimate claim of entitlement" to a conditional use permit, he has not been deprived of that benefit. All he alleges is that "Defendants" (he does not identify which ones) expressed their *intention* to deny him a conditional use permit. The plaintiff fails to allege even that he has applied or will apply for a conditional use permit. Thus, the plaintiff has failed to state a plausible claim for relief that the County Defendants violated the Due Process Clause, and that claim will be dismissed.

*5. Anti-trust Violations*

The plaintiff next alleges that the County Defendants have violated anti-trust laws because they "control, regulate and dictate policies for zoning and conditional use permits" in Hall County. Filing 1 at 18. The County Defendants move to dismiss, asserting both that the plaintiff has failed to allege facts establishing a monopoly exists, and that they are entitled to *Parker* immunity. Filing 76 at 11–13.

As explained above, the Court construes the plaintiff's complaint as bringing a single cause of action under §§ 4 and 16 of the Clayton Act on the basis of alleged violations of §§ 1 and 2 of the Sherman Act. Section 1 of the Sherman Act, 15 U.S.C. § 1, makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." And § 2 of the Sherman Act, 15 U.S.C. § 2, makes it illegal to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."

The Supreme Court has held that the Sherman Act does not apply to anticompetitive restraints imposed by the states "as an act of government." *Parker v. Brown*, 317 U.S. 341, 352 (1943). Although *Parker* immunity does not apply directly to local governments—such as county governments—the Supreme Court has held that a local government's "restriction of competition

24

may sometimes be an authorized implementation of state policy, and [has] accorded *Parker* immunity where that is the case." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 370 (1991). For the action of a local government to be "an authorized implementation of state policy," the local government must have both the authority to regulate, and the "authority to suppress competition." *Id.* at 370, 372.

A local government has authority to regulate where the state has delegated to the local government the power to enact the regulation in question. Here, the Hall County Board of Supervisors clearly had authority to regulate under Neb. Rev. Stat. § 23-114, which expressly gives county boards the power to adopt zoning resolutions.

A local government has the authority to suppress competition if there is a "'clear articulation of a state policy to authorize anticompetitive conduct' by the municipality in connection with its regulation." *Omni Outdoor*, 499 U.S. at 372 (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985)). The Supreme Court has "rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition." *Id.* Rather, it is sufficient to show that "suppression of competition is the 'foreseeable result' of what the statute authorizes." *Id.* at 373 (quoting *Hallie*, 471 U.S. at 42). Where a local government has acted pursuant to its power to adopt zoning resolutions, that condition is "amply met," because "[t]he very purpose of zoning regulation is to displace unfettered business freedom in a manner that regularly has the effect of preventing normal acts of competition." *Id.*

Accordingly, the Court finds that the County Defendants are immune from liability for anti-trust violations, because the zoning resolution adopted by the Hall County Board of Supervisors was "an authorized implementation of state policy." *See Omni Outdoor*, 499 U.S. at 370. The Court additionally notes that the plaintiff has also alleged that "Defendants enforce their monopoly and restraint of trade through boycotts, blacklists and concerted refusals to deal with Plaintiff." Filing 1 at 18. This contention is unsupported by specific factual allegations, and is therefore insufficient to state a plausible claim for relief. Thus, the anti-trust claims against the County Defendants will be dismissed.

## 6. Defamation

Next, the County Defendants move to dismiss the plaintiff's state law defamation claim against them on several grounds. *See* filing 76 at 31–34. In part, the County Defendants argue that they are immune from suit for claims of defamation. Filing 76 at 32.

Under Neb. Rev. Stat. § 13-902, a political subdivision and its employees are immune from tort claims except as provided by the Political

Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901, et seq. The PTSCA specifies that it does not waive immunity for "[a]ny claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Neb. Rev. Stat. § 13-910(7).

The County Defendants are clearly immune from the plaintiff's claim of defamation—libel and slander are on the list of torts for which Nebraska has not waived immunity. Accordingly, these claims will be dismissed against the County Defendants.

### 7. Interference with business relationships

Next, the County Defendants move to dismiss the plaintiff's state law tortious interference with business relationships claim, mostly repeating the same arguments they made with respect to the defamation claim. *See* filing 76 at 34. And as with defamation, the County Defendants are immune from claims of tortious interference with business relationships. This claim arises from "interference with contract rights," one of the torts for which Nebraska has not waived sovereign immunity. *See Teetor v. Dawson Pub. Power Dist.*, 808 N.W.2d 86, 94–95 (Neb. 2012). Accordingly, this claim will be dismissed against the County Defendants.

### 8. Infliction of emotional distress

Next, the County Defendants move to dismiss the plaintiff's infliction of emotional distress claim on several grounds. In part, the County Defendants contend that the plaintiff has failed to allege facts giving rise to a plausible claim for relief for intentional infliction of emotional distress. Filing 76 at 41.

To recover for intentional infliction of emotional distress under Nebraska law, a plaintiff must prove (1) intentional or reckless conduct (2) that was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Roth v. Wiese*, 716 N.W.2d 419, 431 (Neb. 2006).

Here, the plaintiff alleges that he has suffered emotional distress as a result of "Defendants' petition and the statements made in conjunction with its circulation, distribution, and publication." Filing 1 at 26. Presumably, the statements complained of include the comments Lanfear and Lancaster made at the public hearing. While the plaintiff has alleged intentional conduct, that conduct was clearly not atrocious or intolerable. *See Roth*, 716 N.W.2d at 431. Nor has the plaintiff sufficiently alleged facts showing emotional distress so severe that no reasonable person should be expected to endure it. *Id.* Thus, the Court will dismiss this claim against the County Defendants.

*9. Negligence*

The County Defendants next move to dismiss the plaintiff's negligence claim against them for various reasons, including because the plaintiff has failed to allege that the Defendants owed him a duty. Filing 76 at 40. The plaintiff has alleged generally that "Defendants" have committed several acts of negligence against him. Filing 1 at 26. The only allegations that appear to apply to the County Defendants is that they "were negligent, careless and reckless in preparing, adopting, and enforcing their zoning resolution." Filing 1 at 26.

As explained above with respect to the Church Defendants, under Nebraska law, "an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm" or when the facts establish a special relationship giving rise to a tort duty. *See A.W.*, 784 N.W.2d at 915. The plaintiff has not alleged that any of the defendants' conduct created such a risk. Rather, to the extent the plaintiff alleges that the defendants had some duty to refrain from acting as they did, those duties are embraced by his other claims for relief. Accordingly, the Court will dismiss the negligence claim against the County Defendants.

*10. Negligent hiring, supervision, and training*

As explained previously with respect to the church defendants, under Nebraska law, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993). As set forth above, the plaintiff has not alleged facts giving rise to a plausible inference that any of the County Defendants could be individually liable for committing any tort against him. Thus, the Court will dismiss the plaintiff's claim for negligent hiring, training, and supervision against the County Defendants.

In sum, the Court will dismiss all claims against the County Defendants. As such, the Court need not reach the County Defendants' motion to dismiss under the anti-SLAPP statute, or any of their other arguments in support of dismissal.

### 3. MOTIONS TO AMEND AND CONSOLIDATE
#### (a) Motion to Consolidate and Amend

The plaintiff moved to consolidate this suit with another suit he has brought against Seward County, and to amend his complaint (filing 78). He subsequently filed a new motion to amend, consolidate, and join parties (filing 114), and withdrew his first motion to amend and consolidate. Filing

114 at 2. Accordingly, the plaintiff's first motion to amend and consolidate is denied as moot.

(b) <u>Motion to Amend</u>

The plaintiff has renewed his request to consolidate this case with the Seward County case, and moved to amend his complaint. *See* filing 114 at 2.

*1. Consolidation*

The plaintiff previously moved to consolidate this lawsuit with a separate lawsuit he brought against Seward County and other defendants (4:15-CV-3068). Filing 78. He renews that request here. Filing 114 at 2. In essence, his complaint in the Seward County case alleges that Seward County, the Seward County Board of Commissioners, the Seward County Attorney, and several individuals serving as Seward County Commissioners violated his rights by adopting a zoning ordinance limiting his ability to open an adult entertainment venue in that county.

Under Fed. R. Civ. P. 42(a), "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." "Consolidation is inappropriate, however, if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998). District courts have broad discretion to decide whether to consolidate an action. *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994).

Here, these two cases rely on completely different sets of facts. One relates to actions taken by various individuals and entities in Hall County, and one relates to actions taken by different individuals and entities in Seward County. The two cases will, therefore, require different, individualized proof based on the unique factual circumstances in each. And although there are a few common questions of law, there are also several significant legal issues that are unique to each case. Accordingly, the Court concludes that consolidation would be impractical and inappropriate here, and it will deny the plaintiff's request to consolidate.

*2. Amendment*

The plaintiff has moved to amend his complaint under Fed. R. Civ. P. 15(a)(2), which allows amendment before trial "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." But "there is no absolute right to amend and a finding 'undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment' may be grounds to deny a motion to amend." *Doe v. Cassel*, 403 F.3d 986, 990–91 (8th Cir. 2005) (quoting *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999)). The

opposing parties have not consented to the plaintiff's proposed amended complaint.

The Court finds that, in light of the above analysis, the plaintiff's amended complaint suffers from many of the same deficiencies that warranted dismissal of most of the claims in the original complaint. In other words, the proposed amended complaint would be futile. But the Court will grant the plaintiff leave to file a new motion to amend, provided that his new proposed amended complaint takes into consideration the principles and analysis set forth above. The Court further notes that, to the extent the plaintiff believes there are claims in his current proposed amended complaint that could survive a motion to dismiss, he may reassert those claims in his next proposed amended complaint.

(c) <u>Motion to file notice of motion nunc pro tunc</u>

Finally, the plaintiff has filed a motion (filing 127) requesting leave to file a notice of motion nunc pro tunc or alternatively allow him to refile the proposed amended complaint, and requesting that the Court stay its decision regarding Hall County's motion to dismiss and compel early disclosure by Hall County. As the Court understands it, this motion is an attempt to correct certain technical deficiencies in the plaintiff's earlier motions to amend. Because the Court has already denied those motions to amend on the merits, this motion to file a notice of motion nunc pro tunc will be denied as moot. Additionally, because the posture of this case has changed significantly as a result of this order, the Court denies the remainder of the motion as moot without prejudice to reassertion before the Magistrate Judge.

IT IS ORDERED:

1.      The motion to strike (filing 111) filed by defendants Third City Christian Church and Evangelical Free Church of Grand Island, Nebraska is granted. The Clerk of the Court is directed to strike filings 85, 90, 91, 92, 93, 96, 97, 98, and 99.

2.      The defendant Kent Mann's motion to dismiss (filing 69) is granted. All claims asserted against Kent Mann are dismissed.

3.      The motion to dismiss (filing 46) filed by defendants Third City Christian Church and Evangelical Free Church of Grand Island, Nebraska is granted. All claims asserted

29

against Third City Christian Church and Evangelical Free Church of Grand Island, Nebraska are dismissed.

4. The motion to dismiss (filing 57) filed by Shay McGowan and the Grand Island Dental Center is granted. All claims asserted against McGowan and the Grand Island Dental Center are dismissed.

5. The motion to dismiss (filing 73) filed by Hall County Board of Supervisors, Hall County, Chad Nabity, Scott Arnold, Gary Quandt, Jane Richardson, Doug Lanfear, and Pam Lancaster is granted. All claims asserted against Hall County Board of Supervisors, Hall County, Chad Nabity, Scott Arnold, Gary Quandt, Jane Richardson, Doug Lanfear, and Pam Lancaster are dismissed.

6. The plaintiff's first motion to consolidate and amend (filing 78) is denied as moot.

7. The plaintiff's second motion to consolidate and amend (filing 114) is denied.

8. The plaintiff's motion to file notice of motion nunc pro tunc or alternatively refile the proposed amended complaint, and to stay the Court's decision regarding Hall County's motion to dismiss and compel early disclosures by Hall County (filing 127) is denied.

9. The plaintiff may file a new motion to amend his complaint by April 21, 2016, provided that his proposed amended complaint takes into consideration the principles and analysis set forth above. To the extent the plaintiff believes there are any claims or allegations in his previously filed proposed amended complaint that could survive a motion to dismiss, he may reassert those claims and allegations.

Dated this 31st day of March, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge